**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Vincent Martinez,<br><br>             Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>             Defendant. | No. CV-22-00504-TUC-JR<br><br>**ORDER** |

Plaintiff Vincent Martinez ("Martinez"), pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeks judicial review of a final decision by the Commissioner of the Social Security Administration ("Commissioner"). (Doc. 1.) The matter is ripe for decision. (Doc. 23, 25, 26.) All parties have consented to decision being rendered by the undersigned United States Magistrate Judge. (Doc. 13.) As more fully set forth below, the decision of the Commissioner will be reversed and the matter remanded to the ALJ for further proceedings.

**BACKGROUND**

**Procedural History**

On October 6, 2020, Martinez protectively filed an application for supplemental security income alleging disability beginning October 11, 2011. (Administrative Record

"AR" 13.) On December 15, 2020, the application was denied initially. (AR 49-63.) On May 8, 2021, the application was denied on reconsideration. (AR 65-73.) On September 29, 2021, a hearing was held before an Administrative Law Judge ("ALJ"). (AR 27-46.) In a decision dated October 15, 2021, the ALJ determined A.S. was not disabled. (AR 13-22.) On October 3, 2022, the Appeals Council denied Martinez's request for review thus making the ALJ's unfavorable decision final for judicial review. (AR 1-6.) *See* 42 U.S.C. §§ 405(g), 1383(c)(3).

**Evidence of Record**[1]

Martinez was born in 1987 and is a younger person in the eyes of the Social Security Administration. He has a high school education. (AR 208.) He has a history of schizophrenia beginning as early as April 2015. (AR 445.)

Martinez was incarcerated in September 2019. (AR 436, 439.) At his December 19, 2019, psychiatric evaluation he was recorded as "very elusive" and refusing to answer questions, presenting as disheveled with poor hygiene, poor eye contact, restricted affect, thought blocking, and impaired memory. (AR 439-441.) Provider Adrian Valle, M.D., considered potential secondary gain because Martinez did not "venture [a] guess [at] some questions" and because he was guarded about his drug use history. (AR 442.) At a supplemental support visit that same day, Martinez presented with blunt affect, delayed answers, poor hygiene, and his low speech was incongruent with his statements. (AR 436.) His mood was recorded as euthymic, his memory impaired, his attitude was guarded, and

---

[1] The Evidence of Record is taken primarily from Martinez's Opening Brief to which the Commissioner has not objected. (Doc. 23 at 3-11; Doc. 25.)

his insight and judgment were poor. (AR 437-438.)

At his next support session on December 26, 2019, Martinez struggled to understand deep breathing and progressive muscle relaxation exercises. (AR 433.) At a January 2, 2020, visit he identified a plan to live with his mother upon release and reported reading in the day room. (AR 430.) He is documented as confused when asked questions. *Id*.

At his January 15, 2020, supplemental support visit he had difficulty answering questions about past psychiatric treatment, thought starting smoking would be good for him, and struggled to grasp concepts on a mental health maintenance plan worksheet. (AR 424.) A January 31, 2020, psychiatric progress note mentions that malingering is no longer suspected because Martinez's presentation was much the same in 2020 as it had been at the Crisis Recovery Center in 2017. (AR 414.) Martinez refused psychiatric medications and the provider planned to seek court ordered treatment, although the provider indicated that the features of Martinez's schizophrenia were less likely to improve. *Id*.

On February 28, 2020, the provider posited that Martinez was unlikely to improve without medication and that he would have little capacity to take care of himself if left untreated. (AR 400.) At a March 27, 2020, visit the provider noted that Martinez did not care whether he was incarcerated or not, or homeless or not, and that he did not see the point of treatment or being determined competent. (AR 381-382.) It was also noted that Martinez made "reasonable protest" at being forced to take Haldol as he was not currently hearing voices and he had been hearing voices the last time he was forced to take Haldol. (AR 381.)

On April 1, 2020, Martinez's first visit after being placed on Haldol, he continued

to present with blunt affect, delayed answers, and low speech and it was still difficult to engage with him. (AR 375.) He was somewhat more engaged a week later, though still exhibiting similarly slow thought process. (AR 372.) On April 10, 2020, Martinez complained of headache and tremor, which his psychiatrist said would go away if he took Haldol at night rather than the day and was less blunted and more conversant than he was previously. (AR 370.) An April 15, 2020, a supplemental support visit record reflects that recent changes in the day room which resulted in more inmates being present was stressful for Martinez. (AR 367.) By April 24, 2020, the providing psychiatrist noted Martinez was improving and was likely near baseline, less withdrawn, more animated and talking more. (AR 362.)

By May 20, 2020, Martinez reported less anxiety in the day room and reported sleeping, reading, and deep breathing as coping strategies. (AR 353.) On May 20, 2020, he expressed hope not to be homeless upon release. (AR 351.) He still struggled to understand concepts such as thinking errors and started withdrawing more from his peers (AR 342 (June 10, 2020, record), 348 (May 27, 2020, record).)

At a June 19, 2020, visit Martinez is recorded as likely having reached maximum improvement. (AR 337.) The provider opined that "[i]t is difficult to determine to what degree his negative symptoms are due to schizophrenia and to what degree there may be a characterologic[al] component." *Id*. The provider opined that "the fact that he has improved some on medication from his negative symptoms makes me think that mostly his negative symptoms are the result of schizophrenia." *Id*.

At a July 20, 2020, visit Martinez continued to provide short answers, present with

slow thought processes, and exhibit somewhat disorganized thinking. (AR 323.) At an August 7, 2020, visit he was unable to identify activities that he enjoyed, he reported being overwhelmed by not knowing how things worked or not knowing the answers to things, and provided limited and minimal responses. (AR 317.)

At an August 27, 2020, visit Martinez is recorded as being unable to identify behaviors that led to a recent disciplinary action. (AR 305.) On September 11, 2020, a provider observed that Martinez's symptoms appeared stable and posited that "[p]atient's prior symptoms may have been induced by substances or where (*sic*) acute on (*sic*) chronic symptoms of psychosis exacerbated by substance abuse." (AR 294.)

At the time of his release on September 23, 2020, Martinez planned to "get some food" and was not distressed. (AR 290.) On October 2, 2020, Martinez received help from Community Health Associates in applying for SSI, getting a phone, and getting SNAP benefits. (AR 461.) He declined other services apart from medication management. *Id.* Martinez' mother, Maria Martinez, was given the crisis line number and was told about PSA Art Awakenings. *Id.* Martinez was assessed as having severe impairment in health practices, communication, managing money, productivity, coping skills, and behavior norms and moderately severe impairment in personal hygiene, grooming, social network, sexuality, community resources, family relationships, nutrition, managing time, and housing stability. (AR 501-502.)

Martinez's mother was present at Martinez's follow-up visit on November 13, 2020. (AR 466-467.) Martinez reported the only thing that was important to him was smoking cigarettes, and his mother reported that he watches television sometimes and goes outside

sometimes. (AR 466.) Martinez's mother reported that Martinez was running out of medications and that she had arranged for a refill. (AR 467-468.)

At a December 16, 2020, psychiatric appointment at which both Martinez and his mother attended, Martinez continued to present as stable and his dosage of Haldol was reduced. (AR 619.) At a January 5, 2021, Community Health Associates visit Martinez's mother reported that Martinez was taking his medication and interacting well with her but not with his brother. (AR 545.) Martinez did not answer questions with full sentences and did not know his strengths. *Id*. His mother answered that he had strengths, which were identified as being good with music, being quiet and good at observing when people need help, and being a good reader. (AR 545-546.)

On January 12, 2021, it was noted that Martinez continues to live with his mother who helps him take his medications, that he took antipsychotic medication, and that he could not describe the symptoms that he had. (AR 623.) His affect was blunted, his impulse control was recorded as fair to poor, and his insight was reordered as fair. (AR 624.) Martinez's mother needed to assist him in making his appointments in March 2021. (AR 554.) On March 18, 2021, Haldol was discontinued and Seroquel started once per day and as needed for agitation. (AR 636.)

At his psychiatric review on April 10, 2021, Martinez thought that in the past he would see things that were not there but he could not remember. (AR 565.) He reported living with his mother. *Id*. He had limited to fair insight and judgment. *Id*. His discharge conditions included the ability to care for himself without supervision for a period of one year. (AR 586). At a psychiatric appointment on April 15, 2021, Seroquel was increased

and Quetiapine was added for agitation and anxiety. (AR 638.) Martinez's hygiene was recorded as having decreased as he had regressed to not bathing for a few days and he was encouraged to establish a routine. *Id.*

In a June 17, 2021, progress note Martinez is recorded not bathing and eating a lot. His mother stated that he had been doing better on Haldol. (AR 682.) His mental status exam was mostly unremarkable. *Id.*

In a July 28, 2021, progress note Martinez's mother is recorded as telling the provider that Martinez would forget to take his Haldol if it were simply left out for him. (AR 686.) On August 4, 2020, Martinez received an injection of Haldol instead. (AR 690.) On August 25, 2021, following his first injection of Haldol, Martinez's affect was flat but he was neither anxious nor depressed. (AR 692.) His insight was poor. (AR 694.) As of July 28, 2021, Martinez was considered to have severe impairment in managing money and a moderately severe impairment in health practices, communication, problem solving, community resources, social network, productivity, and coping skills. (AR 716-717.)

On September 1, 2021, provider Patrick Hickey, PMHNP, opined that Martinez was markedly or extremely limited in all four domains of mental functioning, noting that Martinez had marked cognitive impairment and was managed with injectable Haldol (AR 719); that he required daily direction from his mother except with activities of daily living (AR 720); and that he had been homeless without family contact for years upon his 2015 release from Crisis Recovery Center (AR 721).

**Witness Statements**

<u>Martinez</u>: Martinez provided a function report characterized by concise answers to

questions. He has a hard time concentrating, gets distracted, and forgets things. (AR 214.) He described a typical day as taking his medication, eating breakfast, smoking and listening to music, eating lunch and dinner, washing dishes, and going to sleep. (AR 215.) He stated he could no longer read. *Id*. He denied difficulties with personal care. (AR 216.) He fixes eggs or sandwiches he does not make dinner. *Id*. He stated that he does not need help to do chores. (AR 217.) He described going on the back porch every day and going shopping with his mother for clothes and snacks. *Id*. He stated that he watches TV and listens to music and does not socialize. (AR 217-218.) He is forgetful and has difficulty concentrating but can follow instructions. (AR 219.)

<u>Martinez's Mother</u>: Martinez lives with his mother and his mother takes him to all his appointments. (AR 223.) Martinez's mother sometimes takes him grocery shopping with her but he prefers to stay outside. *Id*. She described Martinez's days as pacing inside the house, going outside to smoke, and coming in and drinking coffee, and watching TV or listening to music. (AR 223-224.) She stated that Martinez often does not know what day it is or whether he has an appointment that day. (AR 223.) She tells him where to find lunch if she has to leave him to go to work. (AR 224.) She reminds him to change his clothes and bathe, but he does not comb his hair or shave his beard. (AR 225.)

She must give him his medication and watch him take it, or else he will throw his medication away. (AR 226.) Martinez can make simple meals and will assist with chores if asked. *Id*. Martinez is not interested in movies but just listens to music almost all day. (AR 228.) If he is in a manic, anxious state he will lash out or attack family members. (AR 229.) He does not complete tasks because he forgets things or will stop because he is

distracted or bored. *Id.* If there is a change in routine, she needs to talk to Martinez about the change and explain why. (AR 230.) Martinez will not carry on a conversation and will only talk if directly asked, and then he will speak only in short answers. Martinez will only ask basic questions like "What day is it?" (AR 231.)

**The ALJ's Decision**

At step one, the ALJ determined that Martinez has not engaged in substantial gainful activity since October 6, 2020, the application date. (AR 15.) At step two, the ALJ determined that Martinez has the severe impairments of schizophrenia, intermittent explosive disorder, and anxiety disorder. *Id*. At step three, the ALJ determined that Martinez does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. (AR 16-17.) After step three and before step four, the ALJ determined Martinez's residual functional capacity ("RFC") to be a full range of work at all exertional levels but with non-exertional limitations limiting Martinez to performing simple, repetitive tasks containing one-to-two step instructions, with no more than occasional, necessary contact with the public, customers, coworkers and supervisors. (AR 18.) At step four, the ALJ found that Martinez has no past relevant work. (AR 20.) At step five, based on vocational expert testimony, the ALJ determined that Martinez could perform the jobs of can filler, bagger, and poultry hanger. (AR 21.) Accordingly, the ALJ found Martinez not disabled. (AR 21-22.)

**ISSUES ON REVIEW**

Martinez raises two issues for review. (Doc. 23 at 2.) First, he urges the ALJ failed to properly consider the "paragraph C" criteria of listing 12.00. *Id*. at 13-16. Second, he

urges that the ALJ's RFC determination fails to account for all of his limitations established by the evidence. (Doc. 23 at 16-19.) The Commissioner defends the ALJ's decision. (Doc. 25 at 3-8.) As more fully explained below, the Court agrees with Martinez on his first claim of error and determines that remand for further administrative proceedings is appropriate. The Court does not reach Martinez's second claim of error.

## STANDARD OF REVIEW

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)). The findings of the Commissioner are meant to be conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla but less than a preponderance." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)). The court may overturn the decision to deny benefits only "when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001). This is so because the ALJ "and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney*, 981 F.2d at 1019 (quoting *Richardson v. Perales*, 402 U.S. 389, 400 (1971)); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). The Commissioner's decision, however, "cannot be affirmed simply by isolating a specific quantum of supporting evidence." *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998) (citing *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir.

1989)). Reviewing courts must consider the evidence that supports as well as detracts from the Commissioner's conclusion. *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975).

A claimant is "disabled" for the purpose of receiving benefits if she is unable to engage in any substantial gainful activity due to an impairment which has lasted, or is expected to last, for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). "The claimant bears the burden of establishing a prima facie case of disability." *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995), *cert. denied*, 517 U.S. 1122 (1996); *Smolen v. Chater*, 80 F.3d 1273, 1289 (9th Cir. 1996).

## ANALYSIS

### "Paragraph C" Criteria Under Listing 12.00

Martinez argues that the ALJ erred by failing to make any specific factual findings in support of his determination that the "paragraph C" criteria are not met. (Doc. 23 at 13.) He urges the "paragraph C" criteria are satisfied because there is a medically documented history of his mental disorders for at least two years along with evidence that he relies on medical treatment, mental health therapy, psychosocial supports or a highly structured setting to diminish the signs and symptoms of his mental disorders on an ongoing basis. *Id.* at 14-16. He also urges that despite his therapy, psychosocial supports and highly structured setting he has achieved only marginal adjustment. *Id*.

The Commissioner argues the ALJ properly supported his finding that the "paragraph C" criteria are not satisfied urging that the ALJ "cites to specific evidence throughout the decision to support []his finding." (Doc. 25 at 4.) The Commissioner also claims, "[e]ven so, the ALJ is not required to give a detailed explanation for []his finding."

*Id.* As explained below, the Court agrees with Martinez that the ALJ's finding that the "paragraph C" criteria are not met is not supported by substantial evidence.

At step three, the ALJ considers whether one or more of the claimant's impairments meets or equals a listed impairment identified in 20 C.F.R. Pt. 404, Subpt. P, App. 1. *Jessica B. v. Comm'r of Soc. Sec.*, No. 1:18-CV-3074-TOR, 2019 WL 850954, at *4 (E.D. Wash. Jan. 30, 2019) (citing 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *Tackett*, 180 F.3d at 1098). If a claimant has an impairment or combination of impairments that meets or equals a listed impairment, the claimant is presumed disabled. *Jessica B.*, 2019 WL 850954, at *4 (citing *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001)). "An ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment." *Jessica B.*, 2019 WL 850954, at *4 (quoting *Lewis*, 236 F.3d at 512). "A boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not do so." *Jessica B.*, 2019 WL 850954, at *4 (quoting *Lewis*, 236 F.3d at 512).

An ALJ must follow a special technique to evaluate the claimant's symptoms and rate her functional limitations in determining whether a mentally impaired claimant meets a listed impairment. *Jessica B.*, 2019 WL 850954, at *4 (citing 20 C.F.R. § 404.1520a(a)). "An ALJ is required to consider: (1) whether specific diagnostic criteria are met ('paragraph A' criteria); and (2) whether specific impairment-related functional limitations are present ('paragraph B' and 'paragraph C' criteria)." *Jessica B.*, 2019 WL 850954, at *4 (citing 20 C.F.R. § 404.1520a(b)). "The 'paragraph A' criteria substantiate medically the presence of a particular mental disorder." *Jessica B.*, 2019 WL 850954, at *4 (citing 20

- 12 -

C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(A)(2)(a)). "The paragraphs B and C criteria describe impairment-related functional limitations that are incompatible with the ability to do any gainful activity." *Jessica B*., 2019 WL 850954, at *4.

"The paragraph C criteria are an alternative to the paragraph B criteria under listings 12.02, 12.03, 12.04, 12.06, and 12.15." *Jessica B*., 2019 WL 850954, at *5 (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(G)(1)). "To satisfy the paragraph C criteria, a claimant must show that her mental impairment(s) has existed for at least two years, and that (1) she relied 'on an ongoing basis, upon medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s), to diminish the symptoms and signs of [her] mental disorder,' and (2) despite her diminished symptoms and signs of her mental disorder, she has achieved only 'marginal adjustment,' meaning 'minimal capacity to adapt to changes in [her] environment or to demands that are not already part of [her] daily life.'" *Jessica B*., 2019 WL 850954, at *5 (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(G)(2)(b)-(c)).

Here, the ALJ analyzed whether Martinez met listings 12.03, 12.06 and 12.08.[2] (AR 16). Apparently assuming the existence of the "paragraph A" criteria, the ALJ first proceeded to examine whether Martinez satisfied the "paragraph B" criteria. (AR 16-17.) The ALJ determined that Martinez did not satisfy the "paragraph B" criteria and that determination is not contested. *Id*. (Doc. 23 at 2).

In determining that Martinez did not satisfy the "paragraph C" criteria, the ALJ

---

[2] Listing 12.08 does not include "paragraph C" criteria. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00. Listing 12.08 only includes paragraphs A and B criteria. *Id*.

- 13 -

stated, in relevant part,

> In this case, the evidence fails to establish the presence of the "paragraph C" criteria. The record does not establish that the claimant had only marginal adjustment, that is, a minimal capacity to adapt to changes in the claimant's environment or to demands that are not already a part of the claimant's daily life. Further, there is insufficient evidence to establish that the claimant's mental disorder(s) were 'serious and persistent.' In particular, there is insufficient evidence to establish that the claimant had a medically documented history of the existence of the disorder(s) over a period of at least 2 years, with evidence of both: (1) medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that was ongoing and that diminished the symptoms and signs of the mental disorder(s); and (2) marginal adjustment or minimal capacity to adapt to changes in the environment or to demands that were not already part of the claimant's daily life. Specifically, the[] evidence fails to show that, despite the claimant's diminished symptoms and signs, the claimant achieved only marginal adjustment. The evidence further fails to show that changes or increased demands have led to exacerbation of the claimant's symptoms and signs and to deterioration in the claimant's function. Accordingly, the evidence fails to satisfy the "paragraph C" criteria.

(AR 17.) As explained below, the Court agrees with Martinez that the ALJ's finding is boilerplate recitation of the "paragraph C" criteria.

The ALJ found that the "evidence fails to establish the presence of the 'paragraph C' criteria." (AR 17.) In reaching this finding, the ALJ failed to reference or discuss any medical evidence contained in the record. The Court of Appeals for the Ninth Circuit has directed that "the ALJ must explain adequately his evaluation of the alterative tests and the combined effects of the impairments" and make sufficient findings upon which a "reviewing court may know the basis for the decision." *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990). The ALJ made no specific findings nor did he discuss any of the "paragraph C" criteria under listings 12.03 and 12.06. Instead, the ALJ restated the "paragraph C" criteria in various ways and summarily determined that the evidence does

not establish the presence of the "paragraph C" criteria. This is error. *See e.g., Katherine M. v. Kijakazi*, Case No. 21-cv-01207-JST, 2022 WL 19975282, at *7 (N.D. Cal. Nov. 23, 2022) (finding "the ALJ's failure to explain his conclusion [that the 'paragraph C' criteria are not met'] renders his 'paragraph C' determination not supported by substantial evidence"); *J.A. v. Kijakazi*, Case No. 20-ccv-7142-VKD, 2022 WL 2181693, at *14 (N.D. Cal. June 16, 2022) (holding that "ALJ's failure to explain his 'paragraph C' determination again leaves the Court to guess why the longitudinal record did not suffice to satisfy C1 and C2"); *Needham v. Berryhill*, Case No. 18-cv-04183-PJH, 2019 WL 5626641, at *3 (N.D. Cal. Aug. 2, 2021) (holding that "[w]ithout identifying a basis for his decision—which, if provided, this court could evaluate in light of earlier-assessed evidence—the ALJ has not made sufficient findings upon which a reviewing court may know the basis for the decision") (internal quotations omitted)).

   The Commissioner argues that "the ALJ specifically considered the 'paragraph C' criteria in the decision and the ALJ cites to specific evidence throughout the decision to support this finding." (Doc. 25 at 4). The Commissioner points out that the ALJ discussed medical evidence when he determined that the "paragraph B" criteria were not satisfied and when he determined Martinez's RFC. *Id*. The Commissioner is correct that the Ninth Circuit Court of Appeals has held that an ALJ need not necessarily include a discussion of the relevant evidence in the section of his opinion dedicated to the listing analysis as long as factual support for his conclusion can be deduced from the ALJ's discussion of the medical evidence. *See Connors v. Colvin*, 656 Fed. Appx. 808, 810 (9th Cir. 2016). However, as explained below, this Court finds that the ALJ's determination regarding the

"paragraph C" criteria cannot be deduced from his discussion of the medical evidence regarding the "paragraph B" criteria and the RFC determination.

First, the ALJ's discussion regarding the "paragraph B" criteria does not provide the necessary factual foundation upon which his factual conclusion regarding the "paragraph C" criteria is based. This is because the ALJ discussed the medical evidence of record as it pertains to the four "paragraph B" criteria. *See* AR 16-17 (discussing Martinez's ability to understand, remember and apply information; interact with others; concentrate persist, or maintain pace; and adapt or manage oneself). In other words, the medical evidence that is examined is different for the paragraph B and C criteria. *See, e.g.*, 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(G)(2)(b)-(c) (listing the "paragraph C" criteria).

Second, the ALJ's decision to afford Patrick Hickey's, PMHNT, opinion no persuasive value during the ALJ's formulation of Martinez's RFC demonstrates a misapplication of a portion of the "paragraph C" criteria. In evaluating the opinion of PMHNT Hickey the ALJ stated, in relevant part,

> Mr. Hickey further opined that claimant meets paragraph C requirement, in that he requires daily direction from his mother, except for completion of activities of daily living. (Ex. 6F) I am not persuaded by this opinion, as it is unsupported to the degree opined by the notes of this treating provider, which list, at worst, fair insight and judgment with mild anxiety. (Ex. 4F pg. 102; 5F pg. 37, 42, 46[,] 52) Additionally, the main supporting evidence cited by the provider for paragraph C occurred well before the period under consideration. Even considering the support provided by claimant's mother during the relevant period, the provider stated that claimant is independent in performing activities of daily living, which suggests greater than minimal adjustment.

(AR 20.) The ALJ's determination that PMHNT Hickey's treatment notes support only a finding of fair sight and judgment with mild anxiety is a finding with respect to "paragraph

B" criteria and not "paragraph C" criteria. *See, e.g.*, 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(E)(1)-(4) (listing the "paragraph B" criteria).

Lastly, the ALJ found that Martinez's living with his mother while being independent in his activities of daily living is evidence that "suggest greater than minimal adjustment." (AR 20.) This Court finds that Martinez's ability to perform his activities of daily living independently is not indicative of his ability to adapt to changes in his environment. For example, in *Pas v. Comm'r Soc. Sec. Agency*, No. CV 20-00286-TUC-DCB (LAB), 2021 WL 3668380, at *5-6 (D. Ariz. June 22, 2021), *report and recommendation adopted*, 2021 WL 363790 (D. Ariz. July 27, 2021), the ALJ determined that the claimant had more than a minimal capacity to adapt to changes in his environment where the claimant lived with his mother but was able to attend medical visits, care for a pet and perform activities of daily living independently. The ALJ found that the claimant had more than a minimal capacity to adapt to changes in his environment and on this basis determined that the "paragraph C" criteria were not met. In reversing the ALJ's determination that the "paragraph C" criteria were not met, Magistrate Judge Leslie Bowman pointed out that activities of daily living and pet care are not "changes" in an environment to which a claimant must adapt. Judge Bowman reasoned, *inter alia*,

> If Pas were living alone, one might reasonably assume that taking care of a pet and attending to one's activities of daily living entail *some* ability to adapt to changes because pets and daily activities present changes to the normal routine from time to time. *See, e.g., Craig v. Saul*, 2020 WL 4284845, at *22 (N.D. Cal. 2020) (Plaintiff showed more than marginal adjustment who 'has been able to live alone for years with only minor support, without any evidence of exacerbation of his symptoms or deterioration in functioning due to changes in his environment.'). Plas, however, does not live alone. He lives with his

mother, so the court cannot make that assumption.

2022 WL 3668380, at *5. (italics in original).

Here, as in *Pas*, Martinez lives with his mother and he is independent in his activities of daily living. This Court is persuaded by the court's reasoning in *Pas* and finds that Martinez's highly structed living situation in conjunction with his independence in his activities of daily living are not demonstrative of his ability to adapt to changes in his daily life. In fact, the evidence of record demonstrates that Martinez has difficulty adapting to changes in his daily life. Martinez's mother testified that she has to give Martinez constant reminders concerning his schedule. (AR 40-41.) Martinez's mother has to tell Martinez of events that are coming up a week or more in advance in an effort to get him to remember the event. (AR 41.) In her written statement, Martinez's mother stated that she has to discuss a change from his normal routine and explain to him why the routine is changing. (AR 230.)

In sum, this Court finds that the ALJ's determination that the "paragraph C" criteria are not met is not supported by substantial evidence. The Court further finds that there is sufficient evidence in the record to support a finding that the "paragraph C" criteria are satisfied. Martinez has a history of schizophrenia dating back to as early as 2015 and he has been receiving treatment since 2019 when he was incarcerated and no longer homeless. Thus, the two year durational requirement of the "paragraph C" criteria appears to be satisfied. There is also evidence that Martinez relies upon medical treatment (taking Haldol) and a highly structured setting (living with his mother) to dimmish the signs and symptoms of his disorder. Finally, the record also contains evidence that despite Martinez's

medication and highly structured living environment he demonstrates only marginal adjustment to changes in his environment. As explained above, Martinez's mother testified that that she has to constantly remind Martinez about his schedule and that she has to discuss with him a change from his normal routine and explain to him why the routine is changing.

A finding that the "paragraph C" criteria are satisfied would result in a determination that Martinez meets or functionally equals a listed impairment at step three and would result in a disabled determination. Accordingly, the Court concludes that the ALJ's error at step three is not inconsequential to the disability analysis and is not harmless. *See Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006).

Upon finding harmful error, the court has the discretion to reverse and remand or reverse and award benefits. *See McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). A case may be remanded for an award of benefits under the credit-as-true rule where:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014).

Martinez seeks remand for the immediate calculation and payment of benefits. (Doc. 23 at 18-19.) He argues that the requirements for the credit-as-true rule are met. *Id*. While the Court agrees with Martinez that there is evidence to support a finding that the "paragraph C" criteria are met, the Court finds that remand to the ALJ for consideration of

- 19 -

the "paragraph C" criteria in the first instance is appropriate. *See e.g., Marcia*, 900 F.2d at 176–77 (declining to apply the credit as true rule where the ALJ erred at step three, holding that the ALJ is in a better position to evaluate the medical evidence in determining whether a claimant equals a listing under step three of the sequential evaluation process, and directing that on remand the ALJ must adequately explain his step three evaluation and finding).

On remand the ALJ is required to consider all the evidence and determine whether the "paragraph C" criteria are met. Additionally, the ALJ is directed to resolve Martinez's claim that the ALJ's RFC finding is not supported by substantial evidence. *See Augustine ex rel. Ramirez v. Astrue*, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) (determining that "th[e] [c]ourt need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand").

## CONCLUSION

For the reasons set forth above, the decision of the ALJ will be reversed and the matter will be remanded to the Commissioner for further proceedings. Accordingly,

**IT IS HEREBY ORDERED REVERSING** the decision of the ALJ and **REMANDING** this matter to the Commissioner pursuant to 42 U.S.C. § 405(g) sentence four. The Clerk of the Court is directed to enter judgment accordingly and close this case.

Dated this 21st day of August, 2023.

*[signature]*
Honorable Jacqueline M. Rateau
United States Magistrate Judge